# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 171

W.C.,                                                     Plaintiff and Appellant

v.

J.H. and T.H.,                                           Defendants and Appellees

No. 20180387

Appeal from the District Court of Ward County, North Central Judicial District, the Honorable Stacy J. Louser, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Aften M. Grant, Minot, ND, for plaintiff and appellant.

John S. Steinberger (argued), Kenmare, ND, and Tom P. Slorby (argued), Minot, ND, for defendants and appellees.

**Crothers, Justice.**

[¶1]    W.C. appeals from a district court order denying his petition to adjudicate paternity and seeking a determination of residential responsibility, decision making responsibility, parenting time, and child support.  W.C. argues the district court abused its discretion in granting a motion quashing discovery.  We affirm.

I

[¶2]    W.C. alleges he is the father of a child born to J.H. in November 2013.  W.C. and J.H. commenced a romantic relationship in late 2012 while J.H was married to T.H.  The couple divorced in June 2013.  Because J.H. gave birth to the child within 300 days of the divorce, T.H. is the presumed father under N.D.C.C. § 14-20-42.  The child's birth certificate does not list a father.

[¶3]    In 2018, after the statute of limitations for challenging a presumed father expired, W.C. commenced an action to adjudicate paternity of the child, seeking a determination of residential responsibility, decision making responsibility, parenting time, and child support.  The district court scheduled an evidentiary hearing.  Before the hearing J.H. filed a motion to quash discovery, arguing W.C.'s requests for financial and medical records were not relevant, onerous, grossly invasive, and even if provided could not establish facts to support the relief sought in the petition.  On August 7, 2018, the district court conducted a hearing on the motion to quash discovery.  The district court granted the motion to quash discovery, finding medical and financial records were not relevant, and even if provided could not support W.C.'s argument pursuant to N.D.C.C. § 14-20-42.

[¶4]    On August 13, 2018, the district court conducted an evidentiary hearing on the paternity claim and heard testimony from W.C., J.H., and T.H.  During the hearing

W.C. introduced a packet containing T.H.'s answers to interrogatories, requests for admissions, and requests for production of documents. The packet included photos of T.H. and the child at family functions, answers to questions regarding family activities, and division of financial responsibilities. The packet also contained T.H.'s objections to the disclosure of financial and medical records. W.C. argued the lack of financial and medical discovery impaired his ability to fully present his case and meet the burden to challenge T.H.'s status as a presumed father.

[¶5]   Based on testimony and interrogatory answers from T.H. the district court found W.C. failed to disprove the parent-child relationship. The district court also found W.C. failed to establish T.H. and J.H. did not cohabitate nor engage in a sexual relationship during the probable time of conception. The district court denied W.C.'s petition.


## II

[¶6]   A district court has broad discretion regarding the scope of discovery, and this Court will not reverse on appeal absent an abuse of discretion. *Bertsch v. Bertsch*, 2007 ND 168, ¶ 10, 740 N.W.2d 388. An abuse of discretion by the district court is never assumed, and the burden of proof is on the party seeking relief to establish it. *Flattum-Riemers v. Flattum-Riemers*, 2003 ND 70, ¶ 7, 660 N.W.2d 558. The district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Schaefer v. Souris River Telecomm. Coop.*, 2000 ND 187, ¶ 10, 618 N.W.2d 175. We will not overturn the district court's decision merely because it is not the decision we may have made if we were deciding the motion. *Gepner v. Fujicolor Processing, Inc.*, 2001 ND 207, ¶ 13, 637 N.W.2d 681.

[¶7]  W.C. argues the district court abused its discretion in granting the motion quashing discovery.

[¶8]  Parties may obtain discovery regarding nonprivileged matters that are relevant to a party's claim. N.D.R.Civ.P. 26(b)(1)(a).  A party may obtain discovery through deposition, interrogatories, documents, and requests for admission.  N.D.R.Civ.P. 26(a)(1-5).

[¶9]  Situations involving presumed fathers are governed by N.D.C.C. § 14-20-42:

> "1. Except as otherwise provided in subsection 2, a proceeding brought by a presumed father, the mother, or another individual to adjudicate the parentage of a child having a presumed father must be commenced not later than two years after the birth of the child.
> 2. A proceeding seeking to disprove the father-child relationship between a child and the child's presumed father may be maintained at any time if the court determines that:
> > a. The presumed father and the mother of the child neither cohabited nor engaged in sexual intercourse with each other during the probable time of conception; and
> > b. The presumed father never openly held out the child as his own.
> 3. For purposes of this section and section 14-20-43, an action to establish support for a child is a proceeding to adjudicate parentage if the child's presumed father raises nonpaternity as a defense to the action."

[¶10]  The child in this case was nearly four years old when W.C. commenced this proceeding.  Because the presumed parenting claim was presented later than two years after the birth of the child W.C. must prove J.H. and T.H. did not cohabitate nor engage in sexual intercourse at the probable time of conception and T.H. did not openly hold the child out as his own.  N.D.C.C. § 14-20-42(2)(a-b).

[¶11]  The district court granted the motion to quash discovery of financial and medical records and found W.C. failed to disprove the parent-child relationship between T.H. and the child.  W.C. sought to discover medical and financial records to disprove J.H's and T.H's testimony they resided together and engaged in a sexual

relationship at the probable time of conception. W.C. asserts the probable date of conception was communicated to him by J.H., but not substantiated with medical records. W.C. also argues J.H. was not cohabitating with T.H. during the period of probable conception and was instead living with a friend. While discovery may have aided W.C. in his effort to disprove J.H. and T.H. resided together and engaged in a sexual relationship, the law also requires W.C. prove T.H. did not openly hold out the child as his own.

[¶12] A verbal acknowledgment of a person willing to claim parentage is of little significance standing alone. *See Matter of Estate of Sorensen*, 411 N.W.2d 362, 363 (N.D. 1987) (holding isolated incidents of a man claiming a child as his own are not sufficient to meet the standard of openly held out). Evidence of a person's commitment to the child and responsibilities undertaken are the ultimate issues to determine whether a presumed parent openly held out a child as his or her own. *See Chatterjee v. King*, 280 P.3d 283 (N.M. 2012) (holding a case-by-case analysis is the best way to determine whether a parent has met the openly held out requirement and established a personal, financial, or custodial relationship with the child); *R.M. v. T.A.*, 233 Cal.App.4th 760 (Cal. Ct. App. 2015) (holding the court may consider all circumstances when deciding whether a person has assumed responsibility for a child). Because there is no statutory definition of openly holding out a child as his own, the meaning would best be proved or disproved through evidence.

[¶13] At the evidentiary hearing W.C. introduced a packet containing interrogatory answers from T.H. The packet contained evidence T.H. holds the child out as his own, including information that T.H. was present at the birth of the child and cut the umbilical cord, added an egress window to the home to prepare an additional bedroom for the growing family, and has considered himself the child's father since birth. T.H. also noted he provides for the child's medical needs by attending appointments and paying for services. The packet contained twelve photos of T.H. and the child including one photo of T.H. at the child's birth and others depicting various family

4

activities, including ice fishing, sledding, reading, riding scooters, and taking family vacations.

[¶14] The district court relied on the requirements to challenge presumed paternity under N.D.C.C. § 14-20-42 and found W.C. failed to disprove the parent-child relationship between the presumed father and the child based on T.H.'s interrogatory answers and testimony at the hearing. The district court found T.H.'s testimony credible and determined even with discovery of financial and medical records W.C. would be unable to meet his burden of disproving the parent-child relationship. W.C. has not shown how medical and financial records would have made a difference or changed the outcome of the case. The district court found a parent-child relationship existed and did not abuse its discretion in quashing further discovery.

IV

[¶15] The district court did not abuse its discretion when it quashed discovery. The district court's order is affirmed.

[¶16] Daniel J. Crothers
Lisa Fair McEvers
Jon J. Jensen
Jerod E. Tufte
Gerald W. VandeWalle, C.J.

5