[Cite as *State v. Munion*, 2013-Ohio-3776.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

STATE OF OHIO,                          :
                                        :
    Plaintiff-Appellee,                 :
                                        :           Case No. 12CA3520
    v.                                  :
                                        :           <u>DECISION AND</u>
TROY A. MUNION,                         :           <u>JUDGMENT ENTRY</u>
                                        :
    Defendant-Appellant.                :           Released: 08/22/2013

_____

<u>APPEARANCES:</u>

Luke Brazinski, Cassity & Brazinski, Portsmouth, Ohio, for Appellant.

Mark E. Kuhn, Scioto County Prosecutor, and Pat Apel, Assistant Prosecuting Attorney, for Appellee.

_____

Hoover, J.

{¶ 1} This is an appeal of a conviction from the Scioto County Court of Common Pleas finding appellant, Troy Munion, guilty of one count of Illegal Manufacture of Drugs in the Vicinity of a Juvenile, a first degree felony, in violation of R.C. 2925.04(A), one count of Illegal Possession of Chemicals for the Manufacture of Drugs, a third degree felony, in violation of R.C. 2925.041(A), and one count Conspiracy to Traffic in Drugs, a second degree felony, in violation of R.C. 2923.01/ 2925.03(A)(1). Appellant assigns error to the trial court for allowing improper authentication of a video admitted into evidence and for restricting trial counsel from discussing the element of intent to the jury during closing arguments. For the following reasons we overrule both assignments of error and affirm the judgment of the trial court.

{¶ 2} Appellant, Troy Munion, sets forth two assignments of error:

First Assignment of error:

> THE TRIAL COURT ERRED IN ALLOWING THE IMPROPER
>
> AUTHENTICATION OF VIDEO EVIDENCE.

Second Assignment of Error:

> THE TRIAL COURT ERRED IN RESTRICTING DEFENSE
>
> COUNSEL'S CLOSING ARGUMENT.

I.

STATEMENT OF THE CASE

{¶ 3}  On March 26, 2012, officers from the Narcotics Unit of the Scioto County Sheriff's Office were investigating the alleged production and trafficking of methamphetamine at the residence of Crystal Collier.  Ms. Collier's residence was located at 2030 State Route 139 in Portsmouth, Ohio.  The officers from the Narcotics Unit met with a confidential informant, who would be going to the residence of Ms. Collier to buy methamphetamine.  This informant was issued a department video recording device to take into the residence.  The informant visited the residence twice. At the first attempt, Ms. Collier was in the process of cooking the methamphetamine. Upon a second attempt the informant stayed at the residence for about an hour and purchased some methamphetamine.  The video captured Ms. Collier in the residence with appellant, Troy Munion, and her two juvenile children.

{¶ 4}  The following day, March 27, 2012, the officers executed a search warrant upon Ms. Collier's residence.  The search yielded many items used in the production of methamphetamine, as well as methamphetamine itself.  Ms. Collier and appellant were

present inside the residence, along with Ms. Collier's two teenage daughters. Ms. Collier and appellant were placed under arrest at this time.

{¶ 5} On April 10, 2012, appellant approached his grandfather, Chief of New Boston Police Darrold Clark about Ms. Collier's drug activity. Appellant told his grandfather that Ms. Collier would be in New Boston in possession of methamphetamine. Chief Clark referred appellant to Lieutenant Diane Davis. Appellant presented Lt. Davis with a scheme to arrest Ms. Collier in her vehicle containing a mobile methamphetamine lab. Later in the day, appellant contacted Lt. Davis and informed her that Ms. Collier would be in the parking lot of a local CVS pharmacy store. Lt. Davis arrested Ms. Collier in the parking lot. Methamphetamine and equipment for its production were found inside Ms. Collier's vehicle.

{¶ 6} On April 30, 2012, appellant was indicted on four counts from the events of March 26-27, 2012:

Count One: Trafficking in Drugs, a fourth degree felony, in violation of R.C. 2925.03(A)(1)

Count Two: Illegal Manufacture of Drugs in Vicinity of a Juvenile, a first degree felony, in violation of R.C. 2925.04(A) & (C)(2)

Count Three: Illegal Possession of Chemicals for the Manufacture of Drugs, a third degree felony in violation of R.C. 2925.041(A)

Count Four: Conspiracy to Traffic Drugs, a second degree felony, in violation of R.C. 2923.01/ 2925.03(A)(1)[1]

---

[1] On September 11, 2012 the trial court docket indicates that the indictment was amended. The State dismissed count one and renumbered the subsequent counts accordingly.

The two-day trial began on September 4, 2012. There were two trial court decisions for which appellant now assigns error.

{¶ 7} During the prosecution's case in chief, witness Detective Sargent John Koch testified to the authenticity of the video recorded by an informant. The informant did not testify at trial. Detective Koch testified two officers and himself issued a department recording device to the informant. The officers watched the informant enter Ms. Collier's residence. They drove back and forth along the street, awaiting the informant's exit. Since there were two visits to Ms. Collier's residence, the informant collected two recordings.

{¶ 8} When the informant exited the residence the second time, the officers retrieved the informant and the video recording device. Detective Koch took the video device back to the Sherriff's office and downloaded the video onto a computer hard drive. At this time, he viewed the video to assess its content. Detective Koch testified that he appeared twice on each recording. At the beginning and end of each recording, he records himself stating his identity, the day, and the time.

{¶ 9} According to Detective Koch the informant video shows Ms. Collier and appellant engaged in the "gassing off stage" during methamphetamine production. After the video was recorded, the Sheriff's department only identified the male with Ms. Collier as "Troy." After the Narcotics officers executed a search warrant upon the residence they were able to identify appellant as the man in the video. Appellant objected to the authentication of the video. The trial court overruled the objection, allowing Detective Koch to authenticate the video for admission into evidence.

{¶ 10}   The second important trial court decision occurred just before the beginning of the trial's second day.  Appellant's counsel, the prosecuting attorney, and the Judge were on the record, outside the presence of the jury.  A discussion took place involving what argument the appellant wanted to present during his case in chief. Appellant planned to present three witnesses on his behalf: New Boston Chief of Police Darrell Clark, Lieutenant Diane Davis, and himself.  Appellant planned to present the argument that he was present during the manufacturing of methamphetamine in order to get Ms. Collier in trouble, which in turn would cut off his brother's supply of drugs.  The prosecutor argued that this confused motive and intent and would mislead the jury.

{¶ 11}   Appellant later testified his conduct was an effort to get Ms. Collier "in trouble" in order to cut off his brother's supply of drugs.  Appellant testified that his brother was working on Ms. Collier's house in exchange for drugs.  Using his witnesses' testimony, appellant wanted to present an argument that his conduct negates the elements of knowingly and purposely for the respected charges.  The trial court decided to bar the argument during closing because it would mislead the jury on the issue of knowingly and purposely.  The court expressed a desire to leave those issues to the jury instructions.

{¶ 12}   The jury found appellant guilty of Illegal Manufacture of Drugs, Illegal Possession of Chemicals for the Manufacture of Drugs, and Conspiracy to Traffic Drugs. On September 26, 2012, appellant was sentenced to a total of five (5) years in prison. Appellant filed this timely appeal on October 26, 2012.

II.

FIRST ASSIGNMENT OF ERROR

{¶ 13} In his first assignment of error, appellant argues that the trial court erred when it allowed Detective Sergeant John Koch to authenticate a video introduced into evidence. Appellant argues Ms. Collier is required to authenticate the informant video because it purportedly shows the inside of her residence. Therefore, appellant states, Detective Koch could not have properly authenticated the video.

### A. Standard of Review

{¶ 14} The decision to admit or exclude evidence rests within the trial court's sound discretion. *State v. Tyler*, 4th Dist. Ross No. 10CA3183, 2011-Ohio-3937 ¶ 24, citing *State v. McGuire*, 80 Ohio St.3d 390, 400–401, 686 N.E.2d 1112 (1997). Thus, a reviewing court will not reverse the trial court's decision absent an abuse of discretion. *State v. Apanovitch*, 33 Ohio St.3d 19, 25, 514 N.E.2d 394 (1987). The term "abuse of discretion" implies that the court's attitude is unreasonable, unconscionable, or arbitrary. *State v. Adams*, 62 Ohio St.2d 151, 157–158, 404 N.E.2d 144 (1980). Furthermore, "[w]hen applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court." *In re Jane Doe 1*, 57 Ohio St.3d 135, 137–138, 566 N.E.2d 1181 (1991).

{¶ 15} "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). Evid.R. 901(B) reads in part:

> (B) Illustrations. By the way of illustration only, and not by way of
> limitation, the following are example of authentication or identification
> conforming to the requirements of this rule:

(1) Testimony of witness with knowledge. Testimony that a matter is what

it is claimed to be.

…

(9) Process or system. Evidence describing a process or system used to

produce a result and showing that the process or system produces an

accurate result.

### B. Analysis

{¶ 16}  Appellant maintains that Detective Koch could not authenticate the video

because he was not present inside the residence.  Appellant cites to *State v. Ice*, 7th Dist.

Belmont No.04BE8, 2005-Ohio-1330.  In *Ice*, photo stills from video taken inside a store

were authenticated when the store manager testified that the photos represented the inside

of the store.  *Id.* at ¶ 6, 21. Appellant's argument is that Ms. Collier would have to be the

one to authenticate the video because it purportedly showed the inside of her residence.

{¶ 17}  Appellee rebuts this argument, stating that Detective Koch's testimony is

sufficient for authentication of the video.  The State cites *State v. Gilliam*, 2nd Dist. Clark

No. 09CA0075, 2011-Ohio-26 and *State v. Bell,* 3rd Dist. Seneca No. 13-12-27, 2013-

Ohio-1303.  In *Gilliam*, an informant carried a camera disguised as a pin to a drug deal

with the defendant.  *Gilliam* at ¶ 15.  For a portion of the meeting, the informant's coat

covered the pen and only audio was produced.  *Id.* Defendant objected that the video was

inadmissible absent the testimony of the informant.  *Id.* at ¶ 16.  Two detectives testified

being familiar with the defendant's voice; and the defendant's voice is heard on the video

recording.  *Id.*  One of the detectives also identified the police informant's voice.  *Id.*  The

trial court admitted the video pursuant to Evid.R. 901(B)(5) and the Second District Court of Appeals affirmed. *Id*. at ¶ 17.

{¶ 18} In *Bell*, an informant contacted police about an impending cocaine purchase. *Bell* at ¶ 15. The informant entered into an agreement with detectives to assist them; and in return, her felony charges would be dropped. *Id.* According to the lead detective, he met with the informant, searched her and her vehicle then issued her the video recording device. Detectives observed informant enter a hotel with a group of people. *Id.* at ¶ 17. The detectives maintained audio surveillance throughout the meeting. *Id.* at ¶ 37. After the operation concluded, a detective created the video, reviewed it, and testified it was a true and accurate copy. *Id.* The detectives followed a similar protocol to the one described by Detective Koch in the case at bar.

{¶ 19} On appeal, the appellant Bell argued that the video was improperly authenticated since the informant did not testify at trial. The Third District Court of Appeals overruled the appellant's argument. The Third District stated: "Detective Boyer's testimony is certainly sufficient to authenticate the audio and the video tapes." *Id*. at ¶ 38.

{¶ 20} In the case before us, Detective Koch testified that he follows a certain protocol when issuing video recorders to informants. According to Detective Koch, he first searched the informant for contraband, issued the recording device, then sent the informant into the driveway of Ms. Collier's residence. Next, Detective Koch and the other officers drove back and forth along the street waiting for informant to come out. The informant made two attempts to purchase methamphetamine inside the residence. After the informant came out the second time, Detective Koch collected the video device

and the small amount of methamphetamine.  At the beginning and end of the video, Detective Koch appears stating the time, date and his identity.

{¶ 21}  The main thrust of appellant's argument is that Ms. Collier is needed to authenticate the video as showing the inside of her residence, where informant purportedly purchased methamphetamine and captured appellant on video.  We disagree with appellant's argument.  Detective Koch's testimony is sufficient to authenticate the video introduced by the state.

{¶ 22}  Detective Koch testified as to the procedure he used in producing the video and that it is a true and accurate copy.  Under the illustrations of Evid.R. 901(B), Detective Koch stands as a witness who can testify as to the authentication of the video the investigation produced.  Also the procedure he discussed involving the informant presents the court with the "process or system" that created the video.  We find the Third District's ruling in *State v. Bell* persuasive and factually similar to the case before us. Therefore, we find Detective Koch's testimony to be sufficient to authenticate the video.

### III.

### SECOND ASSIGNMENT OF ERROR

{¶ 23}  In his second assignment of error, appellant argues that the trial court erred when it restricted his defense counsel's closing arguments. According to appellant, he wanted to get Ms. Collier in trouble, which would cut off his brother's supply of drugs. The trial court allowed defense counsel to mention the testimony in closing arguments, but did not want counsel to say that it negates an element of intent in relation to the offenses charged.  The trial court stated the arguments might confuse the jury on the issues of intent.

A. Standard of Review

{¶ 24}  We review the trial court's decision to restrict closing arguments under an abuse of discretion standard.  *See State v. Powell*, 4th Dist., Athens No. 07CA20, 2008-Ohio-4171 ¶ 44; *see also State v. Fellows*, 47 Ohio App.2d 154, 155, 352 N.E.2d 631 (3rd Dist. 1975); *State v. Watson*, 3rd Dist. Union No. 14-09-01, 2009-Ohio-6713 ¶ 26. Considerable latitude is permitted in closing arguments, and the question is generally considered one falling in the first instance within the sound discretion of the trial court. *State v. Pustare*, 33 Ohio App.2d 305, 312, 295 N.E.2d 210 (8th Dist.1973). Thus, a reviewing court will not reverse the trial court's decision absent an abuse of discretion. *State v. Apanovitch*, 33 Ohio St.3d 19, 25, 514 N.E.2d 394 (1987). The term "abuse of discretion" implies that the court's attitude is unreasonable, unconscionable, or arbitrary. *State v. Adams*, 62 Ohio St.2d 151, 157–158, 404 N.E.2d 144 (1980).  Furthermore, "[w]hen applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court." *In re Jane Doe 1*, 57 Ohio St.3d 135, 137–138, 566 N.E.2d 1181 (1991).

B. Analysis

{¶ 25}  We do not believe the trial court abused its discretion, when it restricted closing arguments.  The issue presented here involves understanding the correct mens rea element for each charge against appellant. For count one Illegal Possession of Chemicals for the Manufacture of Drugs R.C. 2925(A) states: "No person shall knowingly…"  For count two, Illegal Possession of Chemicals for the manufacture of Drugs, R.C. 2925.041(A) states: "No person shall knowingly…"  For count three, Conspiracy to

Manufacture Drugs, R.C. 2923.01 states: "No person, with purpose…" Therefore the element of intent for counts one, two is "knowingly", and for count three, "purposely"

{¶ 26} Knowingly and purposely are degrees of culpability attached to mental states defined in R.C. 2901.22. "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901(B).

{¶ 27} Appellant wanted to use the testimony of Chief Clark, Lt. Davis, and himself in order to demonstrate his actions were an effort to thwart Ms. Collier's methamphetamine business. Appellant believed this argument could negate the "knowingly" and "purposely" intent elements of the counts against him. The State argued at trial and here on appeal that this testimony described actions that took place after the events of March 26-27, for which appellant was being charged. The trial court allowed defense counsel to summarize appellant's assertion that his actions were just to thwart Ms. Collier; but it did not permit counsel from discussing negation of the intent elements.

{¶ 28} We do not find this to be an abuse of discretion by the trial court. While we recognize counsel should have wide latitude during closing arguments, the trial court possesses the discretion to set limits if necessary. Appellant was able to present his story of aiding police to arrest Ms. Collier on April 10, 2012. These actions however took

place after the events for which appellant was charged.  The trial court considered these arguments from counsel and ruled to set the limits of closing argument.  We affirm the trial court's decision to restrict the State and appellant from mentioning the intent elements during closing arguments.

IV.

Conclusion

{¶ 29}  We find appellant's two assignments of error are without merit; and accordingly we affirm his convictions.  The video admitted into evidence was properly authenticated.  The trial court's decision to restrict the intent elements during closing argument was not an abuse of discretion.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED.  Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court.  If a stay is continued by this entry, it will terminate at the earliest of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, P.J. and Abele, J.:  Concur in Judgment and Opinion.


For the Court


By:_____
         Marie Hoover, Judge


**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.